UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LEONOR PAGTAKHAN-SO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 14-370-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ALEX CUETO, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Defendants Alex Cueto, Leticia V. De Castro, and the Association of Philippine Physicians in America Foundation's (the "Foundation") motions for summary judgment. [Record Nos. 90, 91, 92] The action centers on a dispute between members of the Board of Trustees of the Foundation regarding its governance and accounting procedures. The defendants contend that there are no material factual issues in dispute and that they are each entitled to entry of judgment in their favor for alleged violations of Michigan's Nonprofit Corporation Act ("Nonprofit Act"), M.C.L. §§ 450.2101, *et seq.*,[1] and claims of civil conspiracy brought by Plaintiffs Leonor Pagtakhan-So, Renato Judalena, and Henry M. Eugenio.[2] After the defendants raised issues relating to the

---

[1]   The Nonprofit Act was substantially revised during this litigation on January 15, 2015. Unless otherwise noted, the references to the statutes are to the version in effect at the time of the 2014 Annual Meeting and at the time the Amended Complaint was filed.

[2]   The plaintiffs' Complaint and Amended Complaint demand an accounting by the defendants. [Record Nos. 1, 14] However, in their joint Response to the defendants' summary judgment motions, the plaintiffs agree that this claim is moot because the defendants produced the requested financial documentation during discovery. [Record No. 100, p. 2 n.1] The accounting claim will be denied.

-1-

plaintiffs' standing, the parties filed supplemental briefs. [Record Nos. 126, 127] For the reasons that follow, the Court will grant the defendants' motions for summary judgment and dismiss the plaintiffs' claims.

## I.

The Foundation is a charitable foundation organized under Michigan's Nonprofit Act. It serves as the charitable arm of the Association of Philippine Physicians in America ("APPA"). [Record No. 91-2, pp. 7–8] APPA is a nonprofit organization organized to support and promote professional activities of physicians in the United States who have Philippine ancestry. [Record No. 91-2, p. 6] Along with the Foundation, APPA also sponsors a House of Delegates and an APPA Auxiliary, whose members are spouses of APPA members. [*Id.*] Members of APPA founded the Foundation to accept charitable donations and promote charitable causes, including supporting a charitable clinic in Payatas, Philippines, providing continuing medical education to APPA members, and providing scholarships to students. [Record No. 91-2, pp. 7–8]

The current dispute centers on certain actions taken in July 2014 and, in part, on which of two versions of the Foundation's Constitution was in effect during the relevant time period. The parties dispute whether the Constitution and Bylaws [Record No. 100-5], referred to as the "2003 Constitution," governed the Foundation in 2014, as the plaintiffs argue, or if another Constitution and Bylaws, referred to as the "2004 Constitution" [Record No. 91-4], governed the Foundation, as the defendants contend. The versions are very similar.

Under Article I, Section 1 of the 2003 Constitution, the Officers of the Foundation include the Chairman, the Secretary-Treasurer, and the Executive Director. Under this

constitution, there are eleven members of the Board of Trustees[3], which consist of the following:

a. Foundation Chairman;
b. Foundation Secretary-Treasurer;
c. Foundation Executive Director;
d. Two Foundation members at large;
e. APPA President;
f. APPA President-Elect;
g. Immediate Past President of the APPA;
h. APPA Speaker of the House of Delegates;
i. APPA Auxiliary President; and
j. an original Member of the Mrs. APPA Project.

[Record No. 100-5, p. 2; Const., Art. III, Sec. 1]  The 2004 Constitution contains a similar composition, except that that the "Immediate Past Chair" of the Foundation is listed in place of a member of the "Mrs. APPA Project." [Record No. 92-5, p. 4, Const., Art. III, Sec. 1]

In 2001, Cueto became the first Chairperson of the Foundation.  [Record No. 91-3, p. 6]  He remained in that position until 2003 or 2004, when De Castro assumed that position within the organization.  De Castro has maintained the position of Chairperson since then.  Thus, Cueto has been the Immediate Past Chair at all times relevant to this action.

The members of the Board of Trustees are elected similarly under both versions of the Constitution.  [Record Nos. 92-5, p. 5; 100-5, p. 3]  The Officers of the Foundation (the Chairman, Secretary-Treasurer, and Executive Director) are nominated by any member of the Board of Trustees and approved by a vote of the majority.  [*Id.*]  Their terms are two years and they may be reelected.  [*Id.*]  The at large members are also nominated to two-year terms by any member of the Board of Trustees and approved by a vote of the majority.  [*Id.*]

---

[3] The list of Members also includes an Executive Director as a Member of the Board of Trustees, which is stricken through with a line on the copy filed as an exhibit. [Record No. 100-5, p. 2] "Executive Director" is also listed as an Officer of the Board of Trustees. [*Id.*]

Neither version of the Constitution addresses reelection of the at large members at the end of their terms. [*Id.*] The 2003 Constitution prohibited the "President of the APPA and Executive Director of the [Foundation]" from serving as the Chairman of the Foundation during their terms. [Record Nos. 100-5, p. 3] By contrast, the 2004 Constitution only prohibits the President of the APPA from serving as the Chairman of the Foundation during his or her tenure as President. [Record Nos. 92-5, p. 5]

Thus, the two differences are that: (i) the 2004 Constitution substitutes the position of Immediate Past President for that of the Mrs. APPA Project; and (ii) the 2004 Constitution only prohibits the President of the APPA from serving as the Chairman of the Foundation, whereas the 2003 Constitution prohibits both the President of APPA and the Executive Director of the Foundation from serving as Chairman.

On July 17, 2014, Eugenio, Judalena, and Dr. Recto Deleon, the Foundation's former Treasurer/Secretary, sent a letter to De Castro requesting that she bring a number of documents to the Annual Meeting of the APPA Foundation on July 31, 2014. [Record No. 91-10] They requested certain documents, including, *inter alia*, tax returns, income and balance sheets, bank statements, reports of incomes and expenses, minutes for meetings, and the Articles of Incorporation, Constitution and Bylaws of the Foundation. [Record No. 91-10] De Castro brought documents to the Annual Meeting which was held in Lexington, Kentucky on July 31, 2014. The plaintiffs contend that those documents were insufficient.

Until this Annual Meeting, there had not been a contested election for any position on the Board of Trustees. [Record No. 100-3, p. 6] However, at the 2014 annual meeting, Eugenio decided to run for the position of Chairman against De Castro. De Castro stepped

aside to permit Cueto, the Immediate Past Chair, to preside over the election—as it appears that she had done before. [Record No. 91-5]

The plaintiffs allege that, prior to the election, defendants falsely determined that Judalena's term had expired. However, the terms for at large members under both Constitutions are the same—two years. Judalena became an at large member on July 26, 2012. Thus, the defendants allege that Judalena's term ended on July 26, 2014 (i.e., five days befor the Annual Meeting). Although the plaintiffs contest the expiration of Judalena's term, they have not cited any authority or given any basis for their argument that his term extended past July 26, 2014.

The plaintiffs allege that the 2014 Annual Meeting was the first time that they saw the 2004 Constitution. They argue that it was through the 2004 Constitution that the defendants were able, for the first time, to place Cueto on the Board of Trustees in his role as Immediate Past Chair, and remove Judalena from his position on the Board of Trustees as a member at large.[4]

---

[4] Although formal minutes from the Foundation's meetings are scarce, it appears that the membership of the Foundation's Board of Trustees was consistent with the 2004 Constitution from at least 2007 forward. The 2007 minutes were submitted by Alexander S. Fangonil, M.D., the Recording Secretary for the meeting. [Record No. 91-5, p. 2] Dr. Eugenio testified that the minutes appeared to be an accurate reflection of the events at the meeting. [Record No. 91-6, p. 9] The minutes from the Foundation's 2007 annual meeting reflect that Alex Cueto served as a member of the Board of Trustees in the position of the Immediate Past Chair. [Record No. 91-5, p. 1] Cueto's membership on the Board in this capacity is consistent with the 2004 Constitution. The Board consisted of eleven members, none of which were identified as a member of the Mrs. APPA Project, as required by the 2003 Constitution. [Record No. 91-5, p. 2] The plaintiffs have not identified the alleged representative from the Mrs. APPA project who allegedly served on the Board of Trustees. The plaintiffs' Verified Amended Complaint only names ten members of the Board of Trustees in 2014, which is inconsistent with the application of either Constitution. [Record No. 14, ¶ 25]

Before votes could be cast for either Eugenio or De Castro, the Trustees and audience fell into discord. [Record No. 100-3, p. 12] Eugenio stood, tore-up his ballot and asserted that "the election is rigged" and the "[Foundation] is all yours. I am out of here." He then exited the meeting. [Record No. 11, pp. 36–37]

Although DeLeon believed that Eugenio had withdrawn his name from the ballot by leaving the room, DeLeon recorded the vote as a 3-3 tie in the original July 2014 meeting minutes, based on how he thought each trustee had voted. [Record No. 100-9, pp. 13–14] But he did not physically count the ballots. [*Id.*] At the next meeting, the minutes were amended to reflect a 3-2 vote in favor of De Castro based on Cueto's count of the vote as the presiding officer at the time of the election. [Record No. 100-9, p. 14]

## II.

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination

---

Also, from at least 2008 forward, the Foundation's tax returns have identified Dr. Cueto as a member of the Board. [Record No. 91-7] The returns for 2008 and 2009 identify Cueto and the other Board Members under the general category of "Directors," but he is listed more specifically as the Past Chair of the Foundation in the returns from 2010 through 2013. None of the individuals listed on the tax returns were identified as a representative from the Mrs. APPA project. [*Id.*]

The only evidence submitted to the Court that would support the application of the 2003 Constitution is Fangonil's Affidavit and the plaintiffs' deposition testimony alleging that the 2003 Constitution had been in effect in the past and had never been amended to their knowledge. [Record No. 91-5, p. 2]

must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### III.

Before addressing the merits of underlying matter, the Court must address the necessary issue of standing. *Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001). The plaintiffs bear the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Further, standing may be raised or considered at any time. *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006). The elements of standing are "not mere pleading requirement but rather an indispensable part of the plaintiff's case," meaning that "each element must be supported in the same way and any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive states of litigation." *Lujan*, 504 U.S. at 561.

**A. Derivative Claims**

The capacity in which the plaintiffs brought suit, their allegations, and claims, have been fluid throughout this litigation. In their most recent iteration, the plaintiffs allege that they "brought this action in their capacity as Trustees of the Foundation in an attempt to obtain declaratory and injunctive relief and to recoup Foundation funds that have been

improperly diverted by Dr. De Castro and Dr. Cueto."[5]  [Record Nos. 100, p. 19; 126, p. 3] The plaintiffs disavow any personal claims, alleging that they only brought claims on behalf of the Foundation.  The plaintiffs are no longer on the Board of Trustees.  Pagtakhan-So's and Judalena's terms have expired.  And Eugenio stepped down as Executive Director at the 2014 Annual Meeting.  Nonetheless, the plaintiffs characterize their claims as seeking a declaration that: (i) the defendants have failed to comply with the financial record keeping and reporting obligations of the Nonprofit Act; and (ii) the defendants have conducted an election in violation of the Foundation's Constitution and Bylaws. [Record No. 100, pp. 1–2]  Further, they ask that "the 2014 election and other actions taken under the unapproved constitution be nullified, and that the individual [d]efendants be removed from office and positions of control within the organization." [Record No. 126, p. 3]

Rule 23.1(b) of the Federal Rules of Civil Procedure sets out specific pleading requirements for derivative actions, none of which have been met by the plaintiffs in this case.  The rule requires that the plaintiffs' verified Complaint "state with particularity: any effort . . . to obtain the desired action from the directors or comparable authority . . . and the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  The plaintiffs' Amended Complaint does not state with particularity any efforts by the plaintiffs to cause the Foundation to take steps to achieve their desired action, or failing to make the effort to do so, and does not allege that the action is not collusive to confer federal jurisdiction.  *See* Fed. R. Civ. P. 23.1(b)(2).

---

[5]  Although the plaintiffs originally claimed that De Castro and Cueto improperly diverted funds from the Foundation, the plaintiffs have not cited to any evidence or testimony in the record that would support that conclusion.  Likewise, the plaintiffs' claim for civil conspiracy based on diversion of funds has not been supported by the record in any way.

It is undisputed that the plaintiffs did not: (i) request a re-vote following the election in 2014; (ii) request to be reinstated to the Board of Trustees; (iii) make any motions to the Board of Trustees regarding the alleged discrepancies in the Constitution and Bylaws; (iv) seek positions on the Board of Trustees after the 2014 Annual Meeting; or (v) take any other remedial action which would have addressed the plaintiffs' concerns prior to initiating this action. They have not explained, in their Amended Complaint or otherwise, why they failed to request any type of remedial action of the Board of Trustees or address why any request would have been futile.

"In a shareholder derivative action, Federal Rule 23.1 of the Federal Rules of Civil Procedure requires that the plaintiff 'allege with particularity' the reasons for failing to make a pre-suit demand." *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 617 (6th Cir. 2008) (quoting *McCall v. Scott*, 239 F.3d 808, 815 (6th Cir. 2001)). "[W]hether the failure to make a demand is excused must be determined under the substantive law of the state of incorporation." *McCall*, 239 F.3d at 815 (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09 (1991)). Here, the plaintiffs have not offered any excuse for their failure to make a demand of the Foundation, so the Court need not reach the issue of whether the plaintiffs would be excused. "If [p]laintiffs do not comply with the requirement of Rule 23.1, they do not have standing to bring suit." *In re Ferro Corp. Derivative Litig.*, 511 F.3d at 617; *see Stanley v. Arnold*, 531 F. App'x 695 (6th Cir. 2013) (affirming district court's dismissal for lack of standing based on failure to comply with Fed. R. Civ. P. 23.1). As a result, all of the plaintiffs' derivative claims brought in their capacities as Trustees will be dismissed.[6]

---

[6] Additionally, Rule 23.1 requires that courts determine whether the plaintiff "fairly and adequately represent[s] the interests of shareholders or members who are similarly situated in

### B. Lack of Present or Future Harm

Although the plaintiffs disavow making any individual claims against the defendants, their requests for relief in the context of declaratory judgment address personal harms. For instance, in their supplemental brief on standing, the plaintiffs generally argue that their injuries are "real, as they are no longer Trustees of an organization where they desire to serve and where they have invested significant resources and money." [Record No. 126, p. 3] They also assert that they have standing because their votes were improperly applied during the 2014 election based on the use of an unauthorized Constitution and, but for the use of the wrong Constitution, the outcome may have been different. Thus, the characterization of the harm to the plaintiffs is personal to them, rather than phrased in terms of harms to the Foundation. Declaratory judgment relief is unavailable to the plaintiffs irrespective of the derivative classification.

To establish a sufficiently-concrete and redressable interest in the dispute to confer standing on a plaintiff, and therefore jurisdiction, a plaintiff must establish that: (i) he or she has suffered an "injury in fact" that is concrete and particularized and actual or imminent, not

---

enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a). It is undisputed that only Pagtakhan-So was a Trustee of the Foundation at the time that the Complaint and Amended Complaint were filed. Michigan law only allowed derivative claims by current shareholders and members at the time the Amended Complaint was filed. M.C.L. § 450.2491 (repealed 2015). None of the plaintiffs are currently Trustees of the Foundation and none of the current Trustees have moved to intervene. There is no evidence on which this Court could conclude that these plaintiffs "fairly and adequately represent" other similarly-situated Trustees in pursuing the rights of the Foundation. *See also Portnoy v. Kawecki Berylco Ind., Inc.*, 607 F.2d 765, 767 (7th Cir. 1979) (citations omitted) ("[A]n action will abate if the plaintiff loses his shareholder status before the litigation ends."); *Johnson v. United States*, 317 F.3d 1331, 1333–34 (Fed. Cir. 2003) ("[W]hen a plaintiff bringing an action on behalf of the corporation is the legal owner of the stock at the time of filing but does not maintain shareholder status throughout the course of the litigation, the plaintiff no longer has standing to bring the action."); *see also In re Facebook, Inc.*, 797 F.3d 148, 156 (2nd Cir. 2015).

conjectural or hypothetical; (ii) the injury is fairly-traceable to the challenged action of the defendant; and (iii) is likely, as opposed to merely speculative, that the action will be redressed by a favorable decision. *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009). "In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing. The plaintiff must allege and/or demonstrate actual present harm or a significant possibility of future harm." *Fieger*, 553 F.3d at 962 (quoting *Ferry*, 471 F.3d at 643). Declaratory judgments are not appropriate mechanisms to address allegations of a past harm. *Ferry*, 471 F.3d at 644 n.3; *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004) ("The 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing.").

### 1. Alleged Violation of the Nonprofit Act

The plaintiffs claim that the defendants did not comply with M.C.L. § 450.2487, which governs the inspection of books and records by shareholders, members, and directors, when De Castro was asked to bring certain records to the 2014 Annual Meeting. However, it appears that any and all documents that fall under the purview of M.C.L. § 450.2487 have been produced to the plaintiffs through discovery. Thus, to the extent that the plaintiffs allege that the defendants previously violated M.C.L. § 450.2487 in July 2014, the violation occurred in the past and has been remedied.

There are no allegations that the defendants' alleged violation of M.C.L. § 450.2487 is ongoing or will occur in the future and there is no current or future potential harm alleged suitable for declaratory judgment relief. Thus, the plaintiffs do not have standing under the declaratory judgment to seek relief for this claim.

### 2. Constitution and Validity of the 2014 Election

In their Amended Complaint, the plaintiffs generally alleged that the defendants violated the Nonprofit Act by: (i) changing the governing documents of the Foundation without a vote of the majority of the Board of Trustees; and (ii) removing trustees without a majority vote of its Board of Trustees. [Record No. 14, p. 8, ¶¶ 36, 37] They contend that the 2014 election was conducted under a "fraudulent" Constitution and Bylaws and request relief through declaratory judgment.

Again, however, the "wrong" that plaintiffs seek to remedy occurred in the past. There are no allegations of continuing, current harm to the plaintiffs or risk of harm in the future. The plaintiffs seek a determination from this Court as to which Constitution applied at the time of the 2014 Annual Meeting and to overturn the results of the election. However, regardless of which Constitution was in effect, the results of the election would remain the same. First, Eugenio withdrew from the election. As a result, De Castro was the only candidate for the position of Chairperson. Second, insofar as the plaintiffs contend that Cueto should not have been on the Board of Trustees under the 2003 version of the Constitution, it is undisputed that he did not vote in the election for Chairperson at the 2014 Annual Meeting. Therefore, the outcome of the election was not altered by his position on the Board.

Again, however, the Court need not reach the merits of the plaintiffs' argument because the plaintiffs have not alleged a current or potential future harm. The plaintiffs' allegations regarding the controlling Constitution in 2014 and the outcome of the election in 2014 address past wrongs, which are insufficient to confer jurisdiction for declaratory judgment in this Court. Any resolution or findings would only address alleged past harms to

Pagtakhan-So, Judalena, and Eugenio. Since the 2014 Annual Meeting, another meeting and another round of elections has occurred. The plaintiffs have not alleged present or future injury resulting from the Foundation's current use of the 2004 Constitution or the past election. Accordingly, to the extent that the plaintiffs' claim seeks relief in the form of a declaration that one Constitution should have been applied or that the election should have proceeded differently, they have not alleged a present or future harm sufficient to bring a claim for declaratory judgment.

### IV.

For the reasons described above, the plaintiffs' claims will be dismissed with prejudice. *See Pratt v. Ventas, Inc.*, 365 F.3d 514, 522–23 (6th Cir. 2004); *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 563 (6th Cir. 2013); *see also B. & V. Distrib. Co., Inc., v. Dottore Co., LLC*, 278 F. App'x 480, 488 n.7 (6th Cir. 2008).

Accordingly, based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The Defendants Alex Cueto, Leticia V. De Castro, and the Association of Philippine Physicians in America Foundation's motions for summary judgment [Record Nos. 90, 91, 92] are **GRANTED**.

2. The plaintiffs' claims are **DISMISSED**, with prejudice.

3. All remaining motions are **DENIED**, as moot.

4. The trial of this matter, previously scheduled to begin March 1, 2016, is **CANCELED**.

This 16th day of February, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge